[Noel *v.* Karper.]

the burden of proving competency: Willis *v.* Willis, 2 Jones 158; Beales *v.* See, 10 Barr 56.

The opinion of the court was delivered, June 25th 1866, by

READ, J.—The charge of the court states the law with great clearness and precision, and no exception is taken to any part except to the answer to the defendant's 5th point, and we think the answer itself was perfectly proper, for it submitted to the jury whether the defendant understood the contents of the notes which he signed and upon which this suit was brought.

We also think there was no error in rejecting the testimony which forms the 1st and 2d specifications of error, as it was clearly irrelevant.

Judgment affirmed.

## Commonwealth *versus* Eckert.

By a will proved in 1828, the testator devised his land to his sister for her life, and at her death to be sold by his executors, and the proceeds "divided between (his) brothers and sister then living, and not to the heirs of such of them as may be deceased;" one brother survived the tenant for life, who died in 1864. *Held*, that the estate of which the testator died seised passed from him to his brothers and sisters at his death in 1828, and was liable only to a tax of 2½ per cent.

ERROR to the Court of Common Pleas of *Lancaster county*.

This was an amicable action of debt and case stated between the Commonwealth and Levi Eckert, commenced October 2d 1865.

Levi Eckert, under the will of his brother Peter, proved May 7th 1828, became the owner in fee of certain real estate, upon the death of Elizabeth Brubaker, in November 1864, to whom it was devised for life. The land was valued at $13,020, on which sum the defendant paid 2½ per cent. as the proper collateral inheritance tax. The Commonwealth claimed 2½ per cent. more, being $325.50. The facts of the case are fully stated by Judge Hayes, in the following opinion, which was adopted by the Supreme Court:—

"This case depends upon the proper construction of the acts relative to the collateral inheritance tax.

"The first act, passed on the 7th April 1826, enacts in the 1st section, that from and after the 1st day of May next, all estates, real, personal and mixed, of every kind whatever, *passing from any person who may be seised or possessed of such estate*, being within this Commonwealth, *either by will or under the intestate laws thereof*, or any *part of such estate* or estates, or *interest*

*therein*, transferred by deed, grant, bargain or sale made or intended to take effect in possession or enjoyment after the death of the grantor or bargainor to any person or persons or to bodies politic or corporate in trust or otherwise, other than to and for the use of father, mother, husband, wife, children and lineal descendants born in lawful wedlock, shall be and they are hereby made subject to a tax or duty of *two dollars and fifty cents* on *every hundred dollars* of the clear value of such estate or estates, and at and after the same rate for any less amount to be paid to the use of the Commonwealth; and all executors and administrators and their sureties shall only be discharged from their liability for the amount of any and all such duties on estates, the settlement of which they may be charged with, by having paid the same over for the use aforesaid as herein directed.

"By the 14th section of the Act of the 22d April 1846, Pamph. L. 489, it was enacted that all estates, real, personal and mixed, of any kind whatever, subject to collateral inheritance tax by the provisions of the 1st section of the Act of the 7th of April 1826, entitled, 'An act relating to collateral inheritances,' *passing from any person who may die seised or possessed* of such estate, after the 1st day of May next, shall thereafter be made subject to a tax or duty for the use of the Commonwealth of *five* dollars on each and every hundred dollars of the clear value of such estate or estates, &c.

"Peter Eckert died about the 13th of April 1828, seised in fee simple of the estate in question—and by his will, proved May 7th 1828, disposed of it in these words, viz.: 'Item, I give and bequeath to my sister Elizabeth Brubaker all of the remaining part of my plantation with the appurtenances thereunto belonging, whereon I now live, to have and to hold the same during her natural life, but no longer: at her decease said plantation shall then be sold by my executors or the survivor or successors of them, and the proceeds thereof shall be equally divided between my brothers and sisters then living, and not to the heirs of such of them as may be deceased,'—and of his said will appointed George Sheaffer and John Stoltzfuss executors, both of whom are since deceased.

"Elizabeth Brubaker, the devisee for life, died in November 1864.

"The testator left surviving him, his brothers George, Jacob, William and Levi Eckert and his sisters Catharine Graybill and Mary Diller, all of whom died before Elizabeth Brubaker, except Levi Eckert, who, as the sole survivor upon her death, entered upon the said plantation above devised, claiming and electing to hold the same in his own right by virtue of the above devise without any sale thereof.

"Under the acts relating to collateral inheritances the planta-

tion was, on the 29th of March 1865, appraised and valued at $13,020, and the said Levi Eckert thereupon paid to the register of Lancaster county, for the use of the Commonwealth, the sum of $325.50, being 2½ per cent. of the appraised value, which he claims to be in full satisfaction of the collateral inheritance tax due by him to the Commonwealth thereon.

" On behalf of the Commonwealth it is claimed that the defendant is bound to pay a collateral inheritance tax of 5 per cent. on the said appraised value.

" The claim of the Commonwealth is founded upon the fact, that the devise to Levi Eckert was a contingent remainder, and that the estate did not vest in him until the decease of Elizabeth Brubaker, which occurred in 1864, and the collateral inheritance tax having been increased in 1846 to 5 per cent., it is contended for the Commonwealth that Levi Eckert is bound for that amount.

" But, on behalf of defendant, it is argued that Levi Eckert did not derive the estate from Elizabeth Brubaker but his brother Peter Eckert, that the estate did not pass from the former but the latter, and that having passed from Peter Eckert in 1828, it became then taxable under the provisions of the Act of the 7th of April 1826—relating to collateral inheritances—at the rate of 2½ per cent.

" As before mentioned, this is a question of construction. By the words of the first law the tax is laid on the *estate,* and what is meant by the *estate,* is the *interest* in the property ; this is the legal meaning, and it was the sense of the legislature—as it appears from the words used in the 1st section, namely : *any part of such estate or interest therein.* Peter Eckert's estate in the plantation devised, was a fee simple. And he devised his whole estate or interest by his will. At his decease in 1828, *this estate of which he died seised and possessed, passed from him by his will to his brothers and sisters,* who were his heirs as well as devisees, and consequently came within the express terms of the 1st section of the Act of 1826, by which such estates were made subject to a tax or duty of $2.50 on every hundred dollars of the clear value of such estate or estates, and executors made, &c., chargeable for the same.

" The rate or amount of collateral inheritance tax was fixed by this act upon the estate of Peter Eckert as passing from him in 1828 ; and the estate, as thus passing from him, is excluded from the operation of the Act of 1826, by express terms which are as follows, viz. : All estates, real, personal and mixed, of any kind whatever, subject to collateral inheritance tax by the provisions of the 1st section of the Act of the 7th April 1826, entitled, ' An act relating to collateral inheritances,' *passing from any person who may be seised or possessed of any such estate after the* 1st

*day of May next*, shall *thereafter* be subject to a duty or tax for the use of the Commonwealth of $5 on each and every hundred dollars of the clear value of such estate or estates,' &c.

"It will be observed that the estate is made subject to the collateral inheritance tax as passing *from* the deceased proprietor to the present *living owner*, and the argument for the Commonwealth supposes that this took place on the death of Elizabeth Brubaker in 1864, that this estate then passed from her to Levi Eckert. There are three modes contemplated by the Collateral Inheritance Act, in which estates may pass from those who are seised and possessed of the same: 1st. By *death with a will;* 2d. By *death without a will*, or *dying intestate;* 3d. By *transfer* by deed, bargain or sale, made or intended to take effect after the death of the grantor or bargainer. It is very clear that by neither of these modes could this estate pass to Levi Eckert from Elizabeth Brubaker. She made no will nor any deed or bargain to transfer the estate. Dying intestate, what of this estate did she leave? Plainly, nothing. She *had nothing* to leave. Her estate terminated with her life; and no estate or interest did or *could pass from her*, by any of these modes, or in any other way.

"In confirmation of these views it may be remarked that the liability of this estate to the tax under the Act of 1826, was complete on the death of the testator Peter Eckert. The whole estate passed from him—the life estate to his sister Elizabeth Brubaker, the remainder to his heirs until the life estate ended, when, *eo instanti*, it vested in Levi Eckert. The tax was chargeable on the whole estate immediately after the death of the testator and was collectable from his executors. Had they paid it, they would have been entitled to credit for the same in their account. The executors failing to pay, this tax of $2\frac{1}{2}$ per cent. continued a charge upon the estate, when it came into the possession of Levi Eckert, and was paid by him, properly, as he was bound to do; and we are of opinion that he was bound to pay at that rate only, since the whole estate *passed from Peter Eckert* who died in 1828, and nothing passed from Elizabeth Brubaker who died in 1864, to Levi Eckert."

Judgment was rendered for the defendant, which was the error assigned.

*Emlen Franklin*, for Commonwealth, plaintiff in error, cited Act of April 22d 1846, § 14, Pamph. L. 489; Act of April 7th 1826, § 1, Pamph. L. 227; 2 Cruise's Dig., tit. 16, ch. 3, § 1, p. 241.

*T. E. Franklin*, for defendant in error, cited Act of April 22d 1846, § 14; Act of April 7th 1826; Act of March 11th 1850, § 5, Pamph. L. 170; 2 Cruise's Dig., tit. 16, ch. 8, § 1, p. 326;

Commonwealth *v.* Duffield, 2 Jones 277; s. c., Brightly's R. 469; Commonwealth *v.* Williams, 1 Harris 29.

The opinion of the court was delivered, June 25th 1866, by

READ, J.—We are so well satisfied with the opinion of the court below, that for the reasons assigned by the learned judge,

The judgment is affirmed.

# Shreiner's Appeal.

1. The parts of a will are to be reconciled where they can be, and one clause permitted to displace another only in case of invincible repugnancy.

2. All writings, and wills more than others, are to be construed as wholes; parts should interpret and modify other parts.

3. A testator gave $2500 to his daughter, " her heirs and assigns," to be paid by his son " as soon as conveniently can be done," with interest from his death until the payment. In a subsequent clause, he ordered when his son should pay the $2500, " and my said daughter shall be then unmarried, then I direct that the same be paid to my executors, who are to put the same out at interest, and pay the interest to my daughter as long as she remains single." *Held*, that the legacy was the daughter's, but whilst she remained single the executors should pay her the interest; on her marriage she would receive the fund, and on her death unmarried it would go to her heir.

APPEAL of John Shreiner, executor, &c., of George Shreiner, deceased, from the decree of the Orphans' Court of *Lancaster county*.

George Shreiner by his will, proved April 19th 1851, gave, in the 3d clause, his plantation to his son David Shreiner in fee, and charged it with $7000, at which he valued it to the devisee; $3500 of this sum was to be retained as his share of the estate, and the remainder to be paid as follows: " $2500, part thereof, to my daughter Catharine Shreiner, her heirs and assigns, by my said son David Shreiner, as soon as conveniently can be done, with interest at 5 per cent. on the same, to be reckoned and calculated from the day of my decease until the day of payment thereof, and $1000, the residue and remainder thereof, to my son George Shreiner, his heirs and assigns, as soon as practicable after my decease, with interest at 5 per cent. on the same, to be reckoned and calculated from the day of my decease until the day of payment thereof. And the lands and premises are further subject to and charged with all and singular the use, occupation, rights and privileges hereinafter given to my said daughter Catharine Shreiner." In the 5th clause: " I give, &c., to my daughter Catharine, her heirs and assigns, the sum of $2500 to be paid to her as aforesaid by my said son David Shreiner out of the lands and premises given and devised to him as aforesaid,