## Kerr Estate

*Kain, Kain & Brown,* for appellant.

*Harry J. Rubin,* for Commonwealth.

KOHLER, P. J., August 23, 1961.—This is an appeal taken by York Hospital, a charitable organization, from a transfer inheritance tax appraisement filed by the Commonwealth on September 1, 1960, in the estate of Charles M. Kerr, Sr., deceased. The appraisement

is in the amount of $216,865.92 and is described as a "remainderman appraisement" stating that the "life tenant: Charles M. Kerr, Jr., died January 29, 1960." In connection with an audit of the first account of a substituted trustee under the will of decedent, the register of wills, as agent for the Commonwealth, assessed and presented a claim for transfer inheritance tax based on such appraisement and in the sum of $19,462.03. This appeal followed.

Appellant's contentions are:

1. The Act of May 28, 1956, P. L. 1757, as amended, 72 PS §2301.1, exempting transfers to charitable institutions from transfer inheritance taxes, relieves appellant from such tax because its remainder interest did not "vest" until after the effective date of the act; and

2. All transfer inheritance taxes were paid immediately following the death of decedent in 1940 under an appraisement and assessment made at that time.

As the record appears, and as stipulated, the facts may be stated as follows:

Charles M. Kerr, Sr., died February 19, 1940. By his will he made certain specific bequests of personalty to friends and to his son, Charles M. Kerr, Jr.; a specific devise of realty to his sisters, for life; and disposed of his residuary estate as follows:

"Item. I order and direct that all estate, succession and transfer inheritance taxes assessed against or levied upon the foregoing legacies, bequests and devise, and upon the life interests hereinafter given to my sisters and my son, shall be paid out of my residuary estate and shall not be charged against the respective legatees or devisees.

"Item. All the rest, residue and remainder of my estate, real, personal and mixed, including my said residence, subject, however, to the devise thereof to my

said sisters as hereinbefore provided, I give, devise and bequeath to my executors hereinafter named in trust, nevertheless, to hold and invest the same and out of the net income thereof to pay the sum of Five Hundred ($500.00) Dollars per year to my sisters, Jennie S. Moul, Sallie J. Kerr, Ella Kerr, and the survivors and survivor of them, for and during the term of their natural lives and the lives of the survivors and survivor of them (provided that my sister, Jennie S. Moul, shall participate in such payments only in case she becomes a widow), and to pay the remainder of such net income thereof to my son, Charles M. Kerr, Jr., during the term of his natural life, and at and upon his death to pay and distribute the corpus or principal, subject to the provisions hereinbefore made for my said sisters, to such of his children and such of the issue, per stirpes, of his deceased children as shall survive him and attain the age of twenty-one years. My surviving executor and trustee shall retain the share or shares of any of such children or issue of deceased children of my said son as shall at the time of his death be under the age of twenty-one years and shall hold and invest the same and pay the net income thereof to or for the comfortable maintenance, education and support of such children and issue during their respective minorities and when and as they shall respectively attain the age of twenty-one years shall pay said shares to them respectively, but if any of them shall die before attaining said age then upon their respective deaths my surviving executor and trustee shall pay such shares to the then living brothers and sisters of such children or issue of deceased children of my said son as shall die before attaining said age, and in default of such then living brothers and sisters shall hold and invest such shares and pay the income thereof upon the same trusts as are hereinafter provided for the benefit of York Hospital.

134

"If my said son, Charles M. Kerr, Jr., shall leave no children or issue of deceased children to survive him, or if, leaving such children or issue, all of them shall die before attaining the age of twenty-one years, then upon the death of my said son or of the last survivor of such children, or issue, as the case may be, I direct that my surviving executor and trustee shall hold and invest the corpus or principal of my estate and out of the net income thereof pay the sum of Five Hundred ($500.00) Dollars per year to Catharine Kerr, wife of my said son, for and during the term of her natural life or so long as she shall remain unmarried; and the remainder thereof to York Hospital, provided that out of the corpus or principal of such trust my said remaining executor and trustee shall pay such estate, succession and transfer inheritance taxes as shall be assessed against or levied upon the said bequest to the said Catharine Kerr, and provided further that my said surviving executor and trustee may in its discretion pay out of the corpus or principal of the trust estate such sum or sums as it may deem advisable for or toward the erection of any new building or buildings of said York Hospital, and that if said York Hospital shall cease to exist the income which otherwise be paid to said York Hospital or the payments out of such corpus or principal which might otherwise be made for said York Hospital may be made to or for such general public hospital located in or near the said City of York as my said surviving executor and trustee shall deem advisable."

Charles M. Kerr, Jr., testator's son, died on January 29, 1960, unmarried and without issue. He had been preceded in death by his daughter, Catherine Kerr, who died on September 1, 1950, and by his wife, also named Catherine Kerr, who had died on August 14, 1959. The three sisters of testator are deceased.

On the date of testator's death, Catharine Kerr, the said daughter of Charles M. Kerr, Jr., was living.

Thus, by virtue of the death of testator's son, Charles M. Kerr, Jr., in 1960, unmarried and without issue, and the death of all other income beneficiaries, York Hospital became vested with the sole beneficial interest of the trust.

On June 6, 1940, the Commonwealth had filed an appraisement which appraised the gross assets, real and personal, at $278,496.90. The form used by the Commonwealth at that time has on its face the statement that the "appraiser duly appointed by the Auditor General of Pennsylvania . . . to make a fair and conscionable appraisement of the said estate, and to assess and fix the cash value of all annuities and life estates growing out of said estate, hereby file the following appraisement." Following the recapitulation of the gross values of the realty and personalty appears the typed phrase, inserted by the appraiser, "(2%—10%) Total Estate $278,496.90."

At the audit of the executor's account, held on December 11, 1940, the then register of wills, as agent for the Commonwealth, presented a claim on his assessment for transfer inheritance taxes, as set forth in the adjudication of this court filed December 19, 1940, as follows:

"Appraisement . . . . . . . . . . . . . . . . . . . . . . $278,496.90
"Deductions are allowed as follows:
"Credits as per account . . . . . $ 23,356.04
"Credits allowed in this report    111.00
"Reserved for compliance
    with widow's ante-nuptial
    agreement . . . . . . . . . . . .  40,000.00
"Amount on which transfer
    inheritance tax has been
    paid at 2% . . . . . . . . . . . 200,000.00   263,467.04

"Balance on which tax is claimed ...............    $ 15,029.86

"We assess the above balance with tax as follows:

"At the rate of 10% on the following items:

"Value of specific bequests ... $    351.00

"Value of life estate created under Item 3 of the will in the residence appraised at $3000 — Expectancy of Ella Kerr at age 76 years being 4.511 years .......    676.65

"Value of $500 Annuity—Expectancy of Ella Kerr at age 76 years, being 4.511 years .................    2,255.50

                                      $   3,283.15

"Tax on the above items ....                $    328.32

"Tax at 2% on the balance of the sum of ........... $ 11,746.71    234.93

"Total tax claim assessed and allowed on balance of $15,029.86 ............         $    563.25"

An examination of the written claim of the register of wills, filed with the audit record, discloses it to be exactly as set forth in the adjudication with the following addition:

"Note:—Above is subject to additional claim for difference between 80% credit in 1926 Federal Estate Taxes and normal amount of Pennsylvania transfer inheritance tax, should the 80% allowance be more than the Penna. normal tax."

Thus, the life estate of Charles M. Kerr, Jr., in the residue was not appraised or assessed separately but that, in lieu thereof, the register assessed and claimed tax at two percent on the entire residue after separately assessing the annuity to the sisters.

Further, in the adjudication, this court stated as follows:

"It must be kept in mind, also, that York Hospital has a contingent interest in the remainder and the Commonwealth will have the right to claim additional transfer inheritance tax on such portion of the estate as might vest in the York Hospital at some future time."

The official notes of audit contain no reference to the claim for transfer inheritance tax.

The inheritance tax docket maintained by the register of wills, pursuant to section 14 of the transfer inheritance act of June 20, 1919, P. L. 521, as amended, 72 PS §2341, has noted in it that the tax was "Pd. in full—1 AD at 270—$563.25—January 17, 1941."

On January 17, 1944, this court made an adjudication of a "second and final" account of the executors, having a balance of only $2,681.95. No claim for transfer inheritance tax was presented, and the adjudication states as follows:

"Transfer inheritance tax has been paid in full."

Events having turned out as they did, upon the death of Charles M. Kerr, Jr., having been predeceased by his wife and his only child, without issue, the Commonwealth now seeks the imposition of transfer inheritance tax at the rate applicable to charities at the time of testator's death in 1940, by making a second appraisement.

This appeal was taken prior to the decision of the Supreme Court in Tracy Estate, 403 Pa. 373. In that case a testator, dying in 1947, bequeathed a life estate

followed by a clearly vested remainder to a charity. The life tenant died in 1958, after the effective date of the Act of May 28, 1956 (1955), P. L. 1757, which provides that "No transfer inheritance tax shall be imposed upon the transfer of any property, real or personal, or of any vested or future interest therein or income therefrom, in trust or otherwise . . ." to charitable institutions. It was held that the Act of 1956, supra, is an amendment to, rather than a partial repeal of, the Act of June 20, 1919, P. L. 521, sec. 2, and acted prospectively only from its effective date of June 1, 1957; and that since all parties agreed that the right to tax, the taxing event, and the transfer all occurred at the date of death of the testator, the charitable remainderman could not claim the benefit of the amendment.

Appellant contends that the law of Tracy Estate, supra, should not apply where, as here, the remainder to the charity was merely "contingent" because the "transfer" did not occur at the death of testator but rather upon the death of Charles M. Kerr, Jr., without issue, in 1960 and after the effective date of the amendment. Appellant points to a construction of "transfer" in our taxing statute, made by the New York Court of Appeals on a similar statute in 1894, and quoted in Tracy Estate, that the word "transfer" contemplates "a present enjoyment or a fixed and absolute right of future enjoyment," and then argues that York Hospital did not have a fixed and absolute right of future enjoyment until the death of Charles M. Kerr, Jr., in 1960 and after the effective date of the amendment in 1956.

It may be that under testator's will the remainder interest bequeathed to York Hospital was "vested subject to divestment" rather than purely contingent. See Estate of Rebecca Moss, 80 Pa. Superior Ct. 323. Such distinction is of great importance in ascertaining the

taxability of a remainder interest passing from a *deceased remainderman*. See Mayer's Estate, 330 Pa. 39. However, we do not believe that the Commonwealth's right to tax this remainder rests upon the ancient problem of "vested or contingent."

It is true that under the Act of 1919, supra, the tax is a "transfer" tax. Haggerty's Estate, 311 Pa. 503. In section 45 of the act, transfer is defined "to include the passing of property, or any interest therein, in possession or enjoyment, present or future, . . ."

Section 1 of the act imposes a tax upon such transfers in certain cases, among them being:

"(d) When any person or corporation comes into possession or enjoyment by a transfer from a resident or nonresident decedent, . . . of an estate in expectancy of any kind or character which is contingent or defeasibly transferred by an instrument taking effect after the passage of this act, . . ."

The tax is on the transfer of the title, and not on the transfer of the enjoyment: Houston's Estate, 276 Pa. 330.

It is not a tax on property, but is an excise on the privilege of inheritance: Tack's Estate, 325 Pa. 545.

Under our early inheritance tax statutes, the death of the testator was construed as the taxable event even for all future interests. In Commonwealth v. Eckert, 53 Pa. 102, testator had devised lands to his sister, for life, and on her death to be sold and the proceeds divided between his brothers and sisters *then living*, and not to the heirs of deceased brothers and sisters. It was held that the estate passed from testator at the time of his death and that a surviving brother, taking all the proceeds at the death of the life tenant, should be charged the collateral tax at the rate in effect at testator's death instead of the higher rate in effect at the death of the life tenant.

Collateral inheritance tax accrues at the decease of the person whose estate, passing to collateral heirs or strangers, is subject to the tax; and this is so whether the estate passes in actual enjoyment, directly or remotely upon the termination of an intervening life estate, or term of years Appeal of Mellon 114 Pa. 564.

In Jewell's Estate, 235 Pa. 119, 123, (1912), construing the Act of May 6, 1887, P. L. 79, it is said:

"Under the Act, the death of the testator, as theretofore, establishes the right to the tax, but it does not become due and collectible until the remainderman enters into 'actual possession . . . by the termination of the estates for life or years'; and when he so enters he must pay the tax upon the value at that time."

In construing the Inheritance Tax Act of July 11, 1917, P. L. 832, in Shugars v. Chamberlain A. E., Inc., 284 Pa. 200, 206, 207, the Supreme Court stated:

"Notwithstanding the different situations, *the tax springs into life on the death of property owners;* eo instanti, it becomes seated on their estates . . . it is possible, under certain conditions, that a part of it does not become payable until a certain event, or the amount may not be ascertainable because the assessment or value on which the rate is to be applied is not known until such event happens; . . ."

In the same case, the court points out the *error* in the statement from Coxe's Estate, 193 Pa. 100, 103, that " 'If the tax shall not be payable until that event [actual possession], it does not arise, it has no beginning . . .' " by explaining that the phrase "it has no beginning" referred to the quantity of the estate and the persons by whom payable, and not to the fact that the tax did not exist, and then states, "It did exist and was a thing in being from the moment the owner of the estate died."

Likewise, Coxe's Estate, supra, was criticized and

almost completely repudiated in Mayer's Estate, supra. In the latter case, the court points to the different problem presented when contingent remainders are involved but is there speaking of the taxability of such remainders, when transmissible, at the death of the remainderman and through his estate.

A contingent remainder is an actual estate and has a possible if not a readily determinable value; it is not a mere expectancy: Hirsh's Trust Estate. 334 Pa. 172, 178.

We construe the Act of 1919, supra, and especially section 1(d) thereof heretofore quoted in part, to vest in the commonwealth, on the death of a testator, the right to tax his testamentary transfers of any future interests, even though "contingent or defeasibly transferred" by the will. Testator's death is the effective date of the will, and the latter is the instrument which transfers the *title*. The transfer of the *title* is the taxing event. When the transfer of *enjoyment* is postponed, the right to demand payment of the tax is likewise postponed until the interest vests in possession.

We conclude, therefore, that the Commonwealth's right to impose a transfer inheritance tax upon the bequest to York Hospital in the will of Charles M. Kerr, Sr. became vested upon his death on February 19, 1940, although the tax might not become due and collectible until the death of Charles M. Kerr, Jr. in 1960, and that, consequently, the Act of May 28, 1956, supra, being prospective in operation, did not divest the Commonwealth's right to tax the bequest.

The second contention of appellant is that all transfer inheritance taxes have been paid by virtue of the appraisement, assessment and payments made immediately following the death of the testator in 1940.

At that time, there was living issue of testator's son; namely, his daughter, Catharine Kerr. The appraise-

ment filed by the state appraiser was on the gross estate and contained no appraisement of the life estate of Charles M. Kerr, Jr. When the register of wills "assessed" the tax in his claim at the audit of the executor's account he, likewise, did not separately assess a tax on such life estate. The specific bequests taxable at 10 percent, the life estate in the specific devise of realty at 10 percent, and the $500 annuity in the residue at 10 percent were separately assessed; however, the remaining residue was assessed and claimed "straight through" at two percent as though the remainder would vest in the then living issue of Charles M. Kerr, Jr.

The reason why the original appraisement was made and the tax assessed and claimed in the manner and form in which they were is unexplained. Prior to the Act of June 24, 1939, P. L. 721, 72 PS §2384, an appraisement for transfer inheritance tax was considered final, and in the absence of fraud, accident or mistake, the only remedy for an erroneous exercise of judgment by the appraiser was an appeal in accordance with the provisions of the statute: Ramsay Estate, 342 Pa. 103; Heberton Estate, 351 Pa. 564. However, the Act of 1939, supra, is limited in its application in permitting a supplemental appraisement *within one year from the decedent's death only.* Further, this is not a supplemental appraisement of assets revealed or ascertained *after* the original appraisement but rather a remainder appraisement of the same assets appraised, and tax assessed thereon, in 1940.

The Supreme Court has repeatedly decided that the appraiser or register may *suspend* any item in the appraisement or assessment pending its final determination: Commonwealth v. Chamberlin Estate, 346

Pa. 472; Haid Estate, 347 Pa. 159; Reynolds Estate, 359 Pa. 616, 619. In the latter case, the register was unable to determine, until the death of the life tenant, what portion of the estate was subject to a two percent tax or to a ten percent tax so, consequently, he expressly reserved the " '. . . right to appropriately tax any distribution made upon the death of the Life Tenant . . .' " It was held that this clearly and unequivocally preserved his authority to make a re-appraisement upon the death of the life tenant. Neither the State appraiser nor the register of wills made such reservation in the Kerr appraisement or assessment.

The applicable legal principles are well summarized in Darsie Estate, 354 Pa. 540, 541, 542, as follows:

"The prescribed statutory method of appraising assets and assessing a transfer inheritance tax was stated in detail by the Orphans' Court of Philadelphia County in Borie's Estate, 13 D. & C. 355. That case has been cited with approval in Commonwealth v. Chamberlin Estate, 346 Pa. 472, 31 A. 2d 93; Haid Estate, 347 Pa. 159, 32 A. 2d 25. We have uniformly decided that when assets of an estate are appraised, and the tax assessed, in the absence of an appeal, the action is final. Justice Simpson said in Rowell's Estate, 315 Pa. 181, at p. 183, 173 A. 634: 'If this is a final appraisement, as it appears to have been intended to be, it ends the present controversy, for a second appraisement is without authority in law: Moneypenny's Est., 181 Pa. 309.' See Heberton Estate, 351 Pa. 564, 565, 41 A. 2d 654. In Heberton Estate, supra, we adopted, per curiam, what Judge Klein wrote in his excellent opinion. He said, '. . . it makes no difference whether the mistake of judgment applies to the taxability of an asset, . . . or a mistaken conclusion that the remainder will be subject to the collateral tax instead of the direct. In either case, the assessment is final and

conclusive on both the taxpayer and the Commonwealth and cannot be challenged except by an appeal.' Id. at p. 567."

There is nothing whatsoever in the original appraisement and the register's written assessment and claim for tax presented at the audit to indicate that it was not intended to be a final appraisement and assessment, and we so find. We have examined the notes of testimony taken at the audit and find nothing contrary thereto. The transfer inheritance tax docket, kept by the register of wills in compliance with section 14 of the Act of 1919, supra, as amended, is in conformity with a final appraisement and assessment, and payment in full thereon. The mistake of judgment by the Commonwealth in its appraisement and assessment in 1940 was the failure to appraise the life estate of Charles M. Kerr, Jr., and to assess a transfer inheritance tax of two percent thereon or, at least to have suspended an appraisal and assessment of tax on the remainder until his death by an express reservation as was done in Reynolds' Estate, supra.

A strikingly similar factual situation occurred in Hull Estate, 9 Fiduc. Rep. 575. In sustaining the appeal from the supplemental appraisement, Judge Bowman stated:

"The original appraisement having been made, no fraud, accident or mistake having been proven, the tax having been assessed at the rate of two percent, the tax having been paid in full, and accepted in full, as the record so clearly shows, and there having been no reservation on the part of the Commonwealth to make a reappraisement and assessment upon the death of testator's son, we can only state in sustaining the appeal what is stated in Reynolds Estates, supra, page 620: 'When an appraisement and assessment purport to be a final determination of the value of the *property appraised* and the *rate assessable,* the assessment and

appraisement are conclusive, except on appeal, even though it may subsequently appear that a mistake in judgment had been made either as to the *value* of an asset or the *rate* of tax . . .' That applies with like effect to the matter now before us."

The Commonwealth contends it is protected by the statement of the court in the adjudication of the first accounting, heretofore quoted, that it must be "kept in mind" that the Commonwealth will have the right to claim additional tax if a portion of the estate vests in York Hospital. We cannot agree.

Neither the State appraiser nor the register of wills, as agent for the Commonwealth, in his assessment and claim for tax, claimed any such right. They are the only persons in whom jurisdiction to make appraisements and assessments for transfer inheritance tax is vested under the Act of 1919, supra. "To assess an inheritance tax, to modify the assessment, or to determine that there has been an overpayment of tax and to decree a refund thereof, is clearly beyond the jurisdiction of an auditing Judge, in the Orphans' Court, when auditing an account of a fiduciary": Commonwealth v. Chamberlin Estate, supra. The court's statement was purely voluntary and not made in adjudication of any rights claimed, or reservations made, by the Commonwealth. At that time (1940), neither Heberton Estate, supra, nor Darsie Estate, supra, had been decided by the Supreme Court, and we are confident the statement would not have been made in the light of those decisions. We fail to see the jurisdiction of the court to modify the Commonwealth's appraisement and assessment in such manner or to claim for the Commonwealth what it failed to claim for itself.

By the same token, the Commonwealth is not barred by the court's statement, in its adjudication of the second accounting, that the inheritance tax is paid in

full. No claim for tax was then before the court for adjudication.

Furthermore, it is well established that the law applied by the orphans' court to an adjudication distributing one fund need not be followed in subsequent distribution of another fund in the same estate. See Kellerman's Estate, 242 Pa. 3; Reamer's Estate, 331 Pa. 117. The court's statement regarding the future rights of the Commonwealth to claim tax was made in the adjudication distributing funds in the hands of the executors. That distribution was final even though the executors and trustees under the will were the same individuals: Hamilton Estate, 351 Pa. 419. The present remainderman appraisement and assessment for tax is made against the assets or fund comprising the trust created in the residuary clause of testator's will and in the hands of the trustee. We are of the opinion that this is "another fund" within the rule that the law applied to the former adjudication and distribution by the executors: namely, that the Commonwealth will have the right to claim additional tax if a portion of the estate vests in York Hospital, is not now binding when another fund is before us.

Therefore, we conclude that we are bound to sustain the appellant on its contention that all transfer inheritance taxes have been paid in full. We find as a fact, and conclude as a matter of law, that the original appraisement and assessment in 1940, containing no reservations or suspensions by the State appraiser or the register of wills, was final and conclusive and that the second appraisement is without authority in law.

### Decree

And now, August 23, 1961, the appeal from the transfer inheritance tax appraisement in the estate of Charles M. Kerr, Sr., filed September 1, 1960, and designated as a remainderman appraisement, apprais-

ing the assets therein described, is hereby sustained, and it is ordered, adjudged and decreed that the said appraisement be set aside and declared null and void. Costs to be paid by appellant.