## Tracy Estate.

Argued January 11, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Ralph S. Snyder,* Deputy Attorney General, with him *Anne X. Alpern,* Attorney General, for Commonwealth, appellant.

*D. Alexander Wieland,* with him *William S. Bailey,* and *Brown, Brown & Wieland,* and *Bailey, Pearson, Miller & Bolton,* for appellee.

OPINION BY MR. JUSTICE BOK, April 17, 1961:

Testatrix died on October 3, 1947, and probate of her will and the grant of letters followed. Under her testament the income from her estate was payable to her sisters until the death of the survivor of them, when the corpus was to be distributed to certain named charities.

The surviving sister died on December 1, 1958.

At the time of testatrix's death the bequests to charity were taxable under the Act of June 20, 1919, P. L. 521, Art. I, §1, as amended, 72 PS §2301. By Acts of May 28, 1956, P. L. (1955) 1757, and of July 11, 1957, P. L. 821, 72 PS §2301.1, both made effective as of June 1, 1957, the Legislature provided that "No transfer inheritance tax shall be imposed upon the transfer of any property, real or personal, or of any vested or future interest therein or income therefrom, in trust or otherwise", to charitable institutions.

On March 5, 1959, the Commonwealth filed its appraisement showing as taxable the value of the testatrix's gifts to charity, and on March 30, 1959, a transfer inheritance tax was assessed on such value. The estate appealed from the appraisement and assessment, which the court below sustained, holding that the gifts to charity were now exempt from tax. The Commonwealth then appealed.

The parties agree that the right to tax accrued at death, which is the taxing event, and that the transfer occurred at that time. The Act of 1919, in imposing the tax on a transfer, made it payable when the person liable for the tax shall actually come into possession of the taxable estate at the end of intervening estates for life or years. The Act of 1956, exempting

gifts to charities, was made prospectively effective to June 1, 1957, and by the Act of July 11, 1957, P. L. 821, unincorporated associations or societies were added to the exemption, but retroactively to June 1st.

The positions of the parties can be stated simply. The Commonwealth contends that its claim to the tax was vested before the Act of 1956, which in terms was an amendment to the Act of 1919, rather than a repeal, and acted prospectively only. The appellee argues that the Act of 1956 was a repeal, that it had no saving clause, and that it was effectively retrospective. We agree with the Commonwealth.

We begin with a presumption against retroactivity. Section 56 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §556, provides: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature." Section 58 of the Act (46 PS §558) provides for strict construction of retroactive provisions. Here the Act of 1956 is labelled an amendment and not a repeal, and the Act of July 11, 1957, expressly makes unincorporated associations and societies exempt from the tax retroactively to June 1; the Legislature knew how to be retroactive when it meant to be. See also *Commonwealth v. Rockwell Mfg. Co.*, 392 Pa. 339 (1958), 140 A. 2d 854, where the presumption and rule of strict construction against retroactivity are mentioned with reliance.

Appellee relies largely on three lower court cases to sustain his view, and there is no doubt that they do sustain it, assuming that the Act of 1956 worked a repeal of the Act of 1919. The cases are *Lloyd's Estate,* 15 Pa. Dist. R. 932, 36 P. L. J. 225 (O.C. Allegheny Co., 1905) ; *Seabrook's Estate,* 25 Pa. Dist. R. 411 (O.C. Philadelphia Co., 1916) ; *Fronefield's Estate,* 30 Pa. Dist. R. 537 (O.C. Montgomery Co., 1921). Of these cases, *Seabrook* follows *Lloyd* in a paragraph, and the

Act involved in *Fronefield* contained an express repealer. *Lloyd* is therefore the monitor.

The turning question at bar is whether the Act of 1956 was a repeal, in part, or an amendment to the Act of 1919. For the reasons above suggested we are of the opinion that it was an amendment and prospective only. We are supported in this position by certain decisions of this court, which we regard as of better authority and purpose than *Lloyd's Estate*. They not only support our basic view but they answer appellee's arguments.

In *Commonwealth v. Stump*, 53 Pa. 132 (1866), we said: "Had the legitimating act been passed *before* the devise took effect, the devisees would, I take it, have held the estate exempt from the Collateral Inheritance Law, for they would have been as capable in law of taking as if they had been born in lawful wedlock, but their estate vested at the death of the testator, which was in May 1853, and if illegitimate then, the Commonwealth's right to the tax vested then also. The legitimating act passed the next year contains no word to release the Commonwealth's vested right, and that it can have no such retroactive effect, *proprio vigore,* is shown by the case of Galbraith v. The Commonwealth, 2 Harris 258, where a similar act, passed the next day after the death of the decedent, was held insufficient to take the estate out of the Collateral Inheritance Law." (Original emphasis.)

In *Shugars v. Chamberlain Amusements Enterprises, Inc.*, 284 Pa. 200 (1925), 130 A. 426, we called attention to the fact that the Act (then as now) contained a provision, 72 PS §2304, that "The tax on real estate shall remain a lien on the real estate on which the same is chargeable until paid", and as to personalty the register of wills may require early security for the payment of the tax. We said: "Notwithstanding the different situations, *the tax springs into life on the*

*death of property owners*: eo instanti, it becomes seated on their estates. If, however, no provision has been made for the ascertainment of the tax, the mere announcement by statute of an intention to tax would not burden an estate.

"Having inaugurated this tax, fixing ways and means for determining the amount, it is possible, under certain conditions, that a part of it does not become payable until a certain event, or the amount may not be ascertainable because the assessment or value on which the rate is to be applied is not known until such event happens; nevertheless, to preserve and safeguard this revenue, the legislature ordered that the tax, when on real estate, should remain a lien until paid. This is an incident of the tax without regard to matters that make it up. The amount may not be known presently; it may with certainty be ascertained in the future, and whatever that sum may be, it remains a lien on the property until removed in some way pointed out by law; persons dealing with property must be held to have notice of it." (Original emphasis.)

We then stated and answered appellee's argument here: "But, says appellee, 'surely it was not the intention of the legislature to prevent alienation for unnumbered years while the lien of this tax remains.' The act points a way out. The purchaser, as an owner, could no doubt pay the tax; and here, if the land was sold clear of liens, the executors may be required to make good the tax. The act gives other methods through which the tax may be presently ascertained and paid."

In *Mayer's Estate,* 330 Pa. 39 (1938), 198 A. 439, we held that the tax is a tax on any transfer under the Act, saying: "That section one imposes the tax upon the transfer of a vested remainder is conceded. Appellant contends, however, relying upon section three, that

the tax is not due until the remainderman actually secures possession, and that in the event of the remaindermen's death during the continuance of the intervening estates, the contingency upon which the tax shall become payable has not occurred and no tax can be collected. We think this contention must be rejected. The tax is a *transfer* tax: cf. Haggerty's Estate, 311 Pa. 503. 'Transfer' is defined in the act (section forty-five) 'to include the passing of property, or any interest therein, in possession or enjoyment, present or future. . . .' Construing the same definition in the New York statute, the Court of Appeals held that the word (transfer) 'thus contemplates a present enjoyment *or a fixed and absolute right of future enjoyment*': Matter of Hoffman, 143 N. Y. 327, at page 335. [Italics ours.] The tax is assessable upon the *transfer* of any vested property interest when that transfer takes place under any of the conditions enumerated in section one. The imposition of the tax and the liability therefor are fixed by the first section and section three simply refers to the time of payment of that tax in the case of future interests." (Original emphasis.) See also *Houston's Estate,* 276 Pa. 330 (1923), 120 A. 267.

Appellee also cites approvingly *Jewell's Estate,* 235 Pa. 119 (1912), 83 A. 610, which was also mentioned in *Seabrook's Estate,* supra (25 Pa. Dist. R. 411), but the opinion contains this statement: "Under the Act, the death of the testator, as theretofore, establishes the right to the tax, but it does not become due and collectible until the remainderman enters into 'actual possession . . . by the termination of the estates for life or years;' and when he so enters he must pay the tax upon the value at that time."

*Jewell* also relies on *Coxe's Estate,* 193 Pa. 100 (1899), 44 A. 256, but to the extent that it was inconsistent it was expressly overruled by *Mayer's Estate,* supra (330 Pa. 39). *Coxe* was overruled on a basic

point, since the opinion says that no one can presently tell who will ultimately be entitled to take after a prodigious series of life estates. The gist of the error appears in the statement: " 'The tax on such estate shall not be payable, nor interest begin to run thereon, until the person or persons liable for the same shall come into actual possession of such estate.' If the tax shall not be payable until that event, it does not arise, it has no beginning, and hence the commonwealth has no title to it and cannot demand its payment until the estate itself 'comes into actual possession' of the person entitled. And such coming into actual possession must be 'by the termination of the estates for life or years.' "

If we were looking for lower court authority, we should not select *Lloyd* but *Jenks Trust,* 17 Pa. D. & C. 2d 745 (1959), and the well-reasoned opinion of Judge GANGLOFF, during the course of which he said: "As already pointed out, the tax in this case is in legal effect a distributive share of the estate due the Commonwealth. That is a vested interest which arises, under statutory law and the authorities hereinabove referred to, upon the death of decedent. A statute will not be given a retroactive effect when such effect would impair or destroy rights already vested: Dillon v. Dougherty, 2 Grant 99; Hartle v. Long, 5 Pa. 491; Shonk v. Brown, 61 Pa. 320; Keene's Appeal, 64 Pa. 268; Alter's Appeal, 67 Pa. 341; Crawford Estate, 362 Pa. 458; Warden Trust, 382 Pa. 311. Moreover, even if it may be conceded that the legislature may impair or destroy a vested right held by the Commonwealth, the intent to do so must be clearly stated, which is not the case here. See McCabe v. Emerson, 18 Pa. 111; Neff's Appeal, 21 Pa. 243."

Appellee argues that the Commonwealth's claim is defeated by the provision in the Act of 1956 that "No . . . tax shall be imposed upon . . . any vested or future

interest . . ." From what we have said above, it is clear that "vested" refers not to the Commonwealth's existing vested rights in taxes but only to those arising on or after the effective date of the amending Act, namely, June 1, 1957.

The decree is reversed at the cost of the estate.

Mr. Justice BELL and Mr. Justice BENJAMIN R. JONES dissent.