## Baum Estate.

Argued March 23, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Francis J. Gafford,* Deputy Attorney General, with him *Eugene J. Brew, Jr.,* Counsel, and *Walter E. Ales-*

*sandroni,* Attorney General, for Commonwealth, appellant.

*William J. Kelly,* with him *Enoch C. Filer, Walter A. Dart, Jr.* and *Lyman C. Shreve,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, June 30, 1965:

This appeal involves the validity of charitable bequests contained in a will executed less than 30 days before death. Testatrix died on May 2, 1958, without heirs or next of kin, nine days after executing her last will dated April 23, 1958. In that will, as in her immediately preceding will of September 27, 1955, she bequeathed her residuary estate in equal shares to three designated charities. Both wills were drawn by the same attorney and contained charitable gifts of identical shares of the residue to the same named charitable beneficiaries for the same purpose.

Immediately upon the execution of her will of April 23, 1958, testatrix requested her attorney-scrivener to tear up the signed copy of her earlier 1955 will. This her attorney did, in her presence and in the presence of another person who had witnessed the new will. However, an identical carbon of her 1955 will which had been prepared simultaneously with the revoked signed copy was retained by the attorney.

The Commonwealth, asserting its right as statutory heir under Section 3(6) of the Intestate Act,[1] claimed the entire residuary estate for itself, contending that the gifts to the charities contained in testatrix's last will were of no effect because made within 30 days of testatrix's death.[2]

---

[1] Act of April 24, 1947, P. L. 80, §3(6), as amended, 20 P.S. §1.3(6).

[2] It is disheartening indeed to discover the Commonwealth asserting an interest contrary to the welfare of the charities in this

The court below held that the undisputed record facts placed the case within the exceptions to the 30-day rule contained in Section 7(1) of the Wills Act,[3]

case, particularly in light of the long-existing charitable intention manifested by this testatrix.

American philanthropy during the year 1963 exceeded ten billion dollars. These contributions came from individuals, business enterprises and testamentary bequests, and approximately half the contributed sum was used for public causes such as health, education and welfare. *Giving U.S.A.* (1964 ed), pp. 7, 10; published by the American Ass'n of Fund-Raising Counsel, Inc., N.Y. There appears little doubt that the ratio of Pennsylvania contributions to the national total exceeded the population ratio. The important fact is that this giving makes substantial funds available in relief of the Commonwealth's governmental obligations in areas of social concern. Surely, at this stage of society's dedication to human welfare, we need not pause to recall the Commonwealth's strong, consistent and very broad policy of assistance to charities and its long manifested encouragement to its citizens and businesses to make charitable contributions. It is difficult to conceive of a Commonwealth public policy that is more fundamental or more meaningful than its frequently restated policy of encouragement to charities and charitable giving in the public interest.

With this public charitable policy in mind, it is disappointing to find the Commonwealth in a posture antithetical to its espoused principles. Had the Commonwealth supported, instead of opposed, the charitable gifts, it would have given, by commendable example, added vitality and substantial reality to the advancement of its own desirable policy, a policy which quite properly it constantly seeks to encourage. It is regrettable indeed that instead the Commonwealth, in this instance, chose a less admirable objective. In addition, a choice on the part of the Commonwealth to support the charities would have been in complete harmony with the purpose of Section 7(1) of the Wills Act. Underlying the policy of the thirty day provision was the desire to protect kin and *natural* heirs. See, e.g., *Hartman's Estate (No. 1)*, 320 Pa. 321, 330, 182 Atl. 234, 238 (1936). It would appear that the statute was not intended to benefit or protect an artificially created statutory heir such as the Commonwealth.

[3] Act of April 24, 1947, P. L. 89, §7(1), 20 P.S. §180.7(1). Unfortunately the section can scarcely be designated a model of legislative draftsmanship. "Wills shall be modified upon the occurrence

and established the validity of the charitable gifts. From this determination the Commonwealth appeals.

Section 7(1) of the Wills Act of 1947 creates two methods by which charitable gifts contained in a will executed within thirty days of death may be validated.[4] One method permits such charitable gifts if all who would benefit by the invalidity of the charitable bequests agree that they shall be valid. The second method permits such gifts if (a) the probated will revokes a prior will executed at least thirty days before death, (b) "the original of which can be produced in legible condition", and (c) the prior instrument contains identical gifts for substantially the same charitable purposes. It is undisputed that conditions (a) and (c) have been fulfilled in this case. The crucial issue is whether the carbon sheets of the prior will qualify as an "original" under requirement (b) above or whether, as the Commonwealth contends, only the now-

---

of any of the following circumstances, among others: (1) Death Within Thirty Days; Religious and Charitable Gifts. Any bequest or devise for religious or charitable purposes included in a will or codicil executed within thirty days of the death of the testator shall be invalid unless all who would benefit by its invalidity agree that it shall be valid. The thirty-day period shall be so computed as to include the day on which the will or codicil is written and to exclude the day of death. Unless the testator directs otherwise, if such a will or codicil shall revoke or supersede a prior will or codicil executed at least thirty days before the testator's death, and not theretofore revoked or superseded and the original of which can be produced in legible condition, and if each instrument shall contain an identical gift for substantially the same religious or charitable purpose, the gift in the later will or codicil shall be valid; or if each instrument shall give for substantially the same religious or charitable purpose a cash legacy or share of the residuary estate or a share of the same asset, payable immediately or subject to identical prior estates and conditions, the later gift shall be valid to the extent to which it shall not exceed the prior gift."

[4] See note 3, supra.

destroyed, executed ribbon copy of the prior will can be admitted to prove pre-existing charitable intent.

It is unquestioned that the carbon sheets of the prior will, which, in this case, were retained by testatrix's attorney and offered to prove the continuing charitable intention of testatrix, were made at the same time, by the same typewriter and by the same strokes as made the now-destroyed ribbon sheets of that will. In *John Wanamaker v. Chase,* 81 Pa. Superior Ct. 201, 203 (1923), the court said: "Where several copies of a writing are made at the same time by the same mechanical operation each is to be regarded as an *original* and is admissible as such [Citing cases and other authority.]." (Emphasis supplied.) Similarly, in *Werner v. Hillman Coal & Coke Co.,* 300 Pa. 256, 264, 150 Atl. 471, 473-74 (1930), involving the question whether certain typewritten papers were copies or originals, the Court quoted with approval a statement in *Harmon v. Territory,* 15 Okla. 147, 164, 79 Pac. 765, 770 (1905). The quoted passage explained that the Oklahoma court did not believe that "a carbon copy of any longhand transcript of a stenographer's official notes, made by the stenographer himself at the time he makes the transcript and as a part of that transaction, is a copy in the sense that the word copy is ordinarily used, any more than several books or newspapers printed upon the same press at the same time and from the same type are copies of each other."

The concept is summarized in Words and Phrases[5] which, under the heading "Original Writing", cites *Lewis v. Phillips-Body Pub. Co.,* 18 Ga. App. 181, 89 S.E. 177 (1916), and *Savannah Bank & Trust Co. v. Purvis,* 6 Ga. App. 275, 65 S.E. 35 (1909), for the proposition that: "All papers executed by the same stroke upon a typewriter—those written by carbon im-

---

[5] 30 Words and Phrases 325 (perm. ed. 1940).

pressions, as well as the sheet which receives the stroke of the letter from the typewriter—are alike *originals,* and after the identity of the stroke of the typewriter has been established, any of the manifold copies may be introduced as the *original* writing in the case." (Emphasis supplied.) Furthermore, in *U.S. Fire Ins. Co. v. L.C. Adam Mercantile Co.,* 117 Okla. 73, 245 Pac. 885 (1926), the syllabus by the court stated: "A carbon impression of a letter written on a typewriter, made by the same stroke of the keys as the companion impression, is an original." See also *Brenner v. Lesher,* 332 Pa. 522, 526, 2 A. 2d 731, 733 (1938); *Commonwealth v. Olitsky,* 184 Pa. Superior Ct. 144, 154-55, 133 A. 2d 238, 243-44 (1957).

Although we recognize that what is or is not an "original" may vary according to the situation, it is apparent, nevertheless, that a carbon may qualify, in appropriate circumstances, as an "original". The fact is that the word "original" is subject to and capable of such varied definitional treatment, see Annot. 65 A.L.R. 2d 342 (1959), that it is utterly impossible to properly determine its meaning in a vacuum. Reference must be made to its legislative context and the purpose and policy which the statutory provision seeks to accomplish.

The purpose of the general thirty day provision of our statute has been stated with consistency. "It was to make reasonably sure that testamentary gifts to religion or charity were the result of deliberate intent of the testator, and were not coerced from him while in weakened physical condition under the influence of the doubts and terrors of impending death." *Paxson's Estate,* 221 Pa. 98, 111, 70 Atl. 280, 285 (1908). Prior to 1947, the Wills Act of 1917[6] made no provision whatever for validating charitable bequests made within

---

[6] Act of June 7, 1917, P. L. 403, §6.

thirty days of death. It was held to be unbending in its prohibition of such gifts, even where it was clear that the testamentary intent to make such bequests had existed for more than the thirty day period. See, e.g., *Hartman's Estate (No. 1)*, 320 Pa. 321, 182 A. 234 (1936). It is graphically clear that the exceptions set out in Section 7(1) of the Wills Act of 1947 were intended to remedy that situation and to remove from the operation of our thirty day prohibition those cases which did not, in reason, fall within the purpose of the thirty day rule. See *McGuigen Estate*, 388 Pa. 475, 131 A. 2d 124 (1957); Comments of the Joint State Government Commission,[7] Comment to §7(1), 20 P.S. §180.7, pp. 267, 268.

In light of this clear legislative history and purpose, it is obvious that what was sought to be accomplished by the validation requirements involved in this case was a form of proof which would satisfactorily show that the charitable intention of the testatrix existed for more than thirty days. Since the section we are considering is remedial in nature, we have held that it must be liberally construed in order to effectuate its purpose. *McGuigen Estate*, 388 Pa. 475, 481, 131 A. 2d 124, 128 (1957). "There are times when uncertain words are to be wrought into consistency and unity with a legislative policy . . . ." *Van Beeck v. Sabine Towing Co.*, 300 U.S. 342, 351, 57 S. Ct. 452, 456 (1937) (CARDOZO, J.). This is such a time and "original", as used in this statute, is such a word.

Construing the word "original" as used in the present statutory context, reason and reality compel us to conclude that it was not the legislative intention to require for proof of pre-existing charitable intent only the revoked, executed ribbon copy of the prior will. This is particularly so in light of the more usual and rea-

---

[7] The Commission which drafted the provision.

sonable standards of proof by which the execution, revocation, operation and interpretation of wills are permitted to be established. It would be unrealistic to attribute to the Legislature an intention to require, in this instance, a higher and more rigid standard of proof than is required by any other provision of the Wills Act relating to probate of wills or administration of decedents' estates.

We hold, therefore, that if the carbon sheets can be properly authenticated, then they will qualify as "originals" for the purpose of Section 7(1) of the Wills Act. There is no question on this record that the carbon sheets of testatrix's 1955 will, introduced to prove her prior charitable intentions, were satisfactorily proved to have been made at the exact time and with the same strokes as the ribbon copy of that will. No doubt exists in anyone's mind that the contents of this document showed the requisite pre-existing charitable intention. The 1958 will was, in all pertinent respects, a reaffirmance of testatrix's previously announced testamentary charitable intention, an intention manifested continuously since September 27, 1955. Under these circumstances, we conclude that the carbon sheets introduced in this case satisfied the statutory requirement and that the charitable bequests contained in testatrix's last will are valid. The residuary estate should be distributed to the charities as directed by the decree below.

Decree affirmed. Costs to be paid by the estate.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The Commonwealth appeals from a Decree of the Orphans' Court which dismissed exceptions to an adjudication which had awarded Mrs. Baum's residuary estate to her charitable legatees.

Mrs. Baum left a last will dated April 23, 1958; unfortunately she died on May 2, 1958, less than thirty

days after signing her will. In her *1958* will, testatrix, who had no heirs or next of kin, *expressly revoked all prior wills* and after a few legacies to friends, left her residuary estate to three charities, Zem Zem Hospital for Crippled Children, Erie County Crippled Children's Society and Humane Society of Erie, in equal shares.

The Commonwealth contends (a) that because testatrix died within thirty days of the execution of her will, the residuary gifts to charities are invalid under Section 7(1) of the Wills Act of April 24, 1947, P. L. 89, 20 P.S. §180.7(1); (b) that an intestacy occurred with respect to all the residuary charitable gifts; and (c) that under Section 3(6) of the Intestate Act of April 24, 1947, P. L. 80, as amended, 20 P.S. §1.3(6), the Commonwealth is entitled to the entire residuary estate.

Section 7(1) of the Wills Act of 1947, supra, pertinently provides: "Any bequest or devise for religious or charitable purposes included in a will or codicil *executed within thirty days* of the death of the testator shall be invalid [1] unless all who would benefit by its invalidity agree that it shall be valid. [Or 2] . . . Unless the testator directs otherwise, *if such a will or codicil shall revoke or supersede a prior will* or codicil executed at least thirty days before the testator's death, and not theretofore revoked or superseded and [3] *the original* of which can be *produced in legible* condition, and [4] if each instrument shall contain an *identical* gift for substantially the same religious or charitable purpose, the gift in the later will or codicil shall be valid; . . ."

Section 3(6) of the Intestate Act of 1947, supra, provides that if there is no surviving spouse, "the entire estate . . . shall descend in the following order: . . .

---

\* Italics throughout, ours.

414

(6) Commonwealth. In default of all persons herein-before described, then to the Commonwealth of Pennsylvania."

The charitable legatees, in an effort to come within one of the exceptions set forth in Section 7(1) of the Wills Act, produced (1) an attorney, Herbert J. Johnson, Jr., and (2) an *incomplete* copy of Mrs. Baum's prior *1955* will, the original of which had been destroyed at her direction. Johnson testified that this *unsigned* and unwitnessed *copy* was *his office copy of her original 1955 will;* that he had retained this carbon copy in his files; that it was made at the same time as the original, by the same typewriter and with the same impressions as her executed original will; that he remembers witnessing it but does not remember who the other witness was, although it was someone in his office. The majority overlooks Johnson's own testimony: "What I have been referring to is *a typewritten copy* of the 1955 will which was made at the same time the original [1955] will was typed." Unlike Mrs. Baum's *original 1955 will,* this typewritten copy, we repeat, did not contain her signature nor the signature of either subscribing witness, and the name of the other subscribing witness was not even known.

Johnson then testified that Mrs. Baum sent for him on April 23, 1958, while she was in the hospital, and told him to bring with him her 1955 will. When he interviewed her in the hospital, she told him the (few) changes she wished to make. He immediately returned to his office and drew her new will dated April 23, 1958. The same day he returned to the hospital and he and a nurse witnessed Mrs. Baum's signature to her new will which contained, inter alia, an express revocation of all prior wills.

Johnson further testified that after the testatrix had executed her will of April 23, 1958, she instructed

him to *destroy her original 1955 will and he then did so in her presence.*

Section 5(3) of the Wills Act of 1947 pertinently provides that such destruction of her original 1955 will would of itself constitute a revocation. See also, *Gray Will,* 365 Pa. 411, 416, 76 A. 2d 169.

Naturally, I would like to do as the majority does, namely, sustain Mrs. Baum's charitable gifts, but the Court has no right to ignore or distort or rewrite the clear language of the pertinent Act of the Legislature. Mrs. Baum's *original* will was physically destroyed by her direction. How can it be resurrected by what is obviously and beyond any doubt an incomplete, unsigned copy?

The 1947 Wills Act provides in plain, unambiguous and unequivocal language not that a gift to charity made within thirty days of death shall be absolutely invalid, but that a religious or charitable gift in such a will "shall be invalid" *unless* it falls within one of the exceptions clearly enumerated and delineated in the statute. Such a last minute charitable gift can be saved only *if (pertinently) a prior validly executed and theretofore unrevoked original will* is produced in legible condition, and such validly executed and unrevoked *original* will contains a substantially identical charitable gift.

Mrs. Baum's *original 1955* will was intentionally destroyed in her presence, by her direction. It follows, as surely as the night the day, that an *unsigned and incomplete copy* of her *1955* will, the original of which had been destroyed at her direction, was not and could not be her *"original\* will"*—indeed, it could not be her will at all, since it was unsigned by her.

---

\* The cases cited in the majority Opinion on various interpretations of the word "original" have no application to wills, and are clearly inapposite.

The majority attempts to justify its decision by relying on what it believes was the underlying reason for the change in the Wills Act of 1947. We can agree that the underlying reason for a change in the law was to ameliorate the harsh and inflexible provisions of Section 6 of the 1917 Wills Act. However, the Legislature, in Section 7(1) of the Wills Act of 1947, clearly specified and delineated, in unambiguous and unequivocal language, the only ways by which such amelioration could be effected. The Court cannot ignore this plain legislative mandate.

Although the 1947 Wills Act is remedial and must be liberally construed whenever reasonably possible (*McGuigen Estate*, 388 Pa. 475, 131 A. 2d 124), the law has been long and well established that "When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 51, of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. §551; *Symons v. National Electric Products, Inc.*, 414 Pa. 505, 200 A. 2d 871.

Once a State Court starts to ignore or alter or rewrite or make exceptions to clear, unequivocal and unambiguous provisions of the Wills Act, in order to produce what the Court believes to be a fair and wise solution of the issues in a particular will case, the Wills Act will become a meaningless (although well intentioned) scrap of paper, and the door will be opened wide to countless fraudulent claims which the Act successfully bars. *Pavlinko Will*, 394 Pa. 564, 571, 148 A. 2d 528.

To summarize: Not even a distorted, tortured Procrustean stretch of the English language can make this *unsigned and incomplete copy of a will, "the original will", or even a will at all.* The result is that testa-

---

* A written instrument, to be a will, must be signed by the testator at the end thereof. Section 2 of the Wills Act of April

trix's attempted gift of her residuary estate to the charities fails, an intestacy results, and said estate descends to the Commonwealth.

I would reverse the Decree, and direct that all costs be paid out of the residuary estate.

Mr. Justice COHEN joins in this dissenting opinion.

24, 1947, P. L. 89, supra (with certain exceptions not here relevant).