## Fry Estate

Before KLEIN, P. J., BOLGER, LEFEVER, SAYLOR, SHOYER AND BURKE, JJ.

*MacCoy, Evans & Lewis*, for appellant.

*Charles F. Nahill*, for Commonwealth.

SHOYER, J., December 16, 1966.—The corporate trustee under the will of Henry A. Fry, who died a resident of Philadelphia on August 30, 1912, has excepted to the dismissal of its appeal from assessment

by the Commonwealth of collateral inheritance tax under the Act of May 6, 1887, P. L. 79.

Decedent devised a share of his estate in trust to his daughter, Anna, with a general power to appoint the remainder by will. The daughter died testate, a resident of Massachusetts, on August 17, 1960.

By her will, Anna D. Fry, in item "FIRST", bequeathed her tangible property to a nonlineal of her father, and then, without mention of her debts or creditors, provided as follows: "SECOND: I give, devise and bequeath all the rest, residue and remainder of my property, both real and personal and intending hereby to exercise any powers of appointment which I may have including the power of appointment given to me under the will of my father, Henry A. Fry, late of Philadelphia, Pennsylvania, to STATE STREET BANK AND TRUST COMPANY as Trustee under Indenture of Trust dated June 20, 1955, between me as Donor and Second Bank-State Street Trust Company (now called State Street Bank and Trust Company) as Trustee, . . . THIRD: I direct that all estate and inheritance taxes and other taxes in the nature of death taxes occasioned by my death whether or not based on property passing through the hands of my executor, shall be paid from the residue of my estate . . ."

The revocable deed of trust, referred to in the daughter's will (effective on her death, according to exceptant's brief), provided in item 5 for distribution of settlor's property and "the property over which she may have power of appointment or disposal" to various individuals and charities. One half the residue was to be held in trust for Margaret Hutchinson, with remainder to charity. No beneficiary under Anna's deed of trust qualifies as a lineal descendant of Henry A. Fry.

Item 4 of the deed provided in part: ". . . The Trustee is also authorized and empowered to pay from the

principal of the trust property any debts of the Donor which may be outstanding at the date of her death, expenses of administration of the Donor's estate and any estate and inheritance taxes or other taxes in the nature of death taxes occasioned by the death of the Donor whether or not based upon the trust property but is to be under no obligation to do so except as required by law . . ."

Following the death of Anna D. Fry, the Commonwealth made a collateral remainder appraisement in her father's estate, assessing a five percent transfer inheritance tax on the value of the property passing from his testamentary trust to the daughter's inter vivos trust. The amount of the tax in question is $7,550.21.

Counsel for taxpayer-appellant argues that the donee blended the appointive estate with her personal estate in giving both to the trustee under her inter vivos trust, and *in effect appointed to herself, a lineal descendant of the donor*, thereby effecting a non-taxable transfer under the tax law of 1887, in force at her father's death.

The learned hearing judge, Saylor, J., adopted the contention of the Commonwealth that since Anna had exercised her power of appointment in favor of a trust, the beneficiaries of which are not lineal descendants of testator, she had exercised the power in favor of collaterals, and the five percent tax then became due. Appellant's theory was rejected as a "convenient tax evasion scheme", and Morris' Estate, 42 D. & C. 522 (1941), was relied on to sustain the assessment.

Here, as in Morris, the applicable statute is the Act of 1887, supra, enacted "To provide for the better collection of collateral inheritance taxes". A tax of five percent was thereby imposed upon transfers "in trust or otherwise, other than to or for" lineal relatives as therein defined. Section 3 provided for assessment of

future interests when the subject of the transfer should "take effect in possession, or come into actual enjoyment . . . upon the value of the estate at the time the right of possession accrues to the owners . . . ", subject to a right of prepayment not here involved.

In Morris, it was ruled that properties passing under powers of appointment were subject to this tax, although powers of appointment were not specifically mentioned in the tax statutes until the Act of June 20, 1919, P. L. 521, sec. 1(d). We do not understand that that interpretive ruling is here controverted. Additional authority, if needed, is supplied by Commonwealth v. Williams' Executors, 13 Pa. 29 (1850); Hess' Estate, 11 D. & C. 311 (1928); Cassatt's Trust, 3 D. & C. 340 (1923); Blakiston's Estate, 25 Dist. R. 365 (1916); and Stokes' Estate, 20 W.N.C. 48 (1887). Not only was the tax imposed on the donor's estate in these cases, but the rate was that prescribed by the law existing at the donor's death for the donor-appointee relationship. Exceptant, while conceding that the facts in Morris are analagous, even in the appointment to a previously created trust, argues that from a property law concept, that case was erroneously decided. When the taxation of the *donor's estate* is considered, so the argument goes, the essential question is just who is the beneficiary of the power of appointment?

We believe that the property law concept given expression by the legislature in 1887, prior thereto and since, and consistently so recognized by the courts (except during the term of the "blending" theory), is that the donor has entrusted the donee as his alter ego with the proper and discreet exercise of the general power to appoint by will. Authorities here and abroad differ as to whether the power in the hands of the donee is an interest in property. The exercise of the power is

considered an event sometimes, in other circumstances a conveyance. In many jurisdictions, the donee's creditors may reach appointive property, but here it is not subject to his creditors, nor to inheritance tax as his property. "It could not be a part of the appointor's effects while he was living, and it cannot be so when he is dead; for a title which did not vest in him when he had capacity to take, could not vest in him when his capacity was lost": Commonwealth v. Duffield, 12 Pa. 277, 279 (1849). See also Anderson Estate, 373 Pa. 294. Whether the exercise of the power by the donee is to be treated as a conveyance or devise for any given purpose is purely *a question of policy*: see Simes & Smith, "Law of Future Interests", chs. 30 and 31, §911 et seq. (2d ed.).

In Pennsylvania, while the tax thrust is upon the transfer of decedent's property, the rate determinant is the relationship of the ultimate beneficiaries to the donor, so that blending, or even direct appointment to the donee's estate, carries no greater tax significance than does transfer of the legal title in trust to a trustee. The Commonwealth has always ignored the identity of the testamentary trustee and assessed the transfer tax at a rate determined by the relationship of testator to his designated beneficiaries.

The doctrine of blending distorted this concept in the early part of this century by holding that the property, along with its appointment, came not from the donor, but from the donee, because the latter had "blended" or mixed it with his individual estate. The history of the blending doctrine in Pennsylvania is traced in Valentine's Estate, 297 Pa. 99 (May 13, 1929), from its origin in McCord's Estate, 276 Pa. 459, 462-63 (1923), through Forney's Estate, 280 Pa. 282, 284-86, (1924), Twitchell's Estate, 284 Pa. 135, 137 (1925), Hagen's Estate, 285 Pa. 326, 329 (1926), and Commonwealth v. Morris, 287 Pa. 61, 63 (1926).

To incur tax liability, it was necessary that the two estates be thoroughly mixed for all purposes—for payment of debts, taxes and legacies; a partial blending would not suffice. "In all of the cases decided by this court . . . , where we held the appointive and the individual estates so blended as to create a general liability to inheritance taxes, the wills plainly showed a purpose to blend the several estates involved *for all purposes, including the payment of [donee's] debts*": Valentine's Estate, supra, p. 103. (Italics supplied). Where the donee had directed payment of her debts from her individual estate, either expressly as in Valentine, or by implication, as in Hagen and here, there was no such blending as would support a claim for inheritance tax on the donee-appointee, rather than the donor-appointee, relationship. In Valentine, the Supreme Court fully approved (p. 104) the statement by the lower court that " 'the principle of McCord's Estate, 276 Pa. 459 [and followed in the above line of cases] is not to be stretched' ".

By the Act of May 16, 1929, P. L. 1795, sec. 1(d), the legislature, three days after the Valentine decision, restored the property concept to its traditional tax focus by providing that "in all cases" property thereafter appointed should " . . . be taxed as of the estate of the donor, notwithstanding any blending of such property with the property of the donee". Since passage of that statute, appointed property has been taxable only in the donor's estate, regardless of whether or not the donee had blended it with his own property: Morris' Estate, supra; Dalsimer's Estate, 15 D. & C. 489 (1931) ; Potter's Estate, 13 D. & C. 667 (1930). Invariably, so far as we can ascertain, the assessment has been made at the rate which would be appropriate had the gift been by donor directly to appointee under the donor's will.

Actually, we can find no blending here. The facts in

Hagen's Estate, supra, are analagous. The donee, Christian Ax Hagen, after making bequests of his tangible personal property, provided: "Third: I declare it to be my intent and purpose to exercise and dispose of as part of my residuary estate in this will in the fullest, largest and most complete manner all powers of disposition and appointment given . . . me, . . . by the will of my father, Arthur Hagen . . . Fourth: All the rest, residue and remainder of my estate, real, personal and mixed whatsoever, and wheresoever situate, including my general estate and including also the principal . . . of the estate of my father, Arthur Hagen, of which by the terms of his will dated the 15th day of September, 1905, and probated at Philadelphia, I enjoy the income and over which I have a power of appointment . . . I give, devise and bequeath to the trustee hereinafter named, in trust, however, as follows. . . ." The Supreme Court said (p. 329): "When he spoke of the residue of his estate, he must have known and necessarily meant that this was such part of his estate as would remain after the payment of his debts. If he had devised his entire estate, together with the estates over which he had the power of appointment, putting all as it were in hotch pot, there then would be strong ground for holding that he had blended them, and the rule which we have heretofore applied . . . would be applicable. As was said by the Superior Court in its opinion (85 Pa. Superior Ct. 123) now up for review, 'His use of the term [residue]—bearing in mind that the will contained no express direction to pay debts, etc.,—is indicative of an intention that the fund over which he had power of appointment should not be subject to or used for the payment of his debts and therefore should not be blended with his estate generally, but should be differentiated so that his debts and any pecuniary legacies which he might give should be chargeable to and payable out of his estate and that

the balance, if any remaining, should be disposed of in the same way that he disposed of the appointed estate.' . . .

"It will further be noted that the appointive estates of which the testator in the instant case was making disposition need not and do not go to his executors at all but go direct to his trustees. It is by this made more manifest that he was not considering the appointive estates as his own and did not have the intent to blend them with his other possessions".

Exceptant would attempt to distinguish this case from Hagen asserting that in Anna Fry's trust, the appointed assets were liable to the donee's debts. Not so, however. They enter her trust as a separate package, coming from her father's trustee, and not from her executor, as does the residue of her individual estate. They are not made subject to payment of her debts without reserve, but only at the discretion, whim or fancy of her trustee, who is merely "authorized and empowered" (not directed) to so apply them, and is under no obligation by the law of Pennsylvania to do so.

Exceptant insists, even though we can find no blending for tax purposes, that donee effectually appointed to her own estate by appointing to her inter vivos deed of trust and, consequently, "died seized or possessed of the appointive property". No reported decision of an appointment *directly to the donee's own estate* has been brought to our attention. This confirms our opinion that any contrast drawn for tax purposes between "blending" and "direct appointment" is a distinction without a difference. After all, blending is essentially the same as appointing to the donee's own estate. For us to hold that such manner of appointment caused the property to lose its character as appointive property would be in direct violation of the clear mandate in the Act of 1929 to tax such property as of the estate

of the donor *in all cases.* See Grossman and Smith, "Pennsylvania Inheritance and Estate Tax", §309-6 and §408-1.

It is significant that the legislature, in adopting the present (but inapplicable) code entitled "Inheritance and Estate Tax Act of 1961", being the Act of June 15, 1961, P. L. 373, 72 PS §2485-101 et seq., has followed its traditional tax policy by providing in section 408 as follows: "Property subject to a power of appointment, whether or not such power is exercised, and notwithstanding any blending of such property with the property of the donee, shall be taxed only as part of the estate of the donor". The commission's comment is that this is in conformity with existing law following the Act of 1929 as construed in Morris' Estate, supra. We thus see a continuous thread of State tax policy stretching for nearly 150 years, from the Act of April 7th, 1826, P. L. 227 (see Commonwealth v. Williams' Executors, supra), down to the present, unbroken except during the brief period of the blending doctrine which was terminated by the Act of 1929. The present tax assessment is consistent with that policy, and we do not view Anna's deed of trust as warranting any departure from it.

Accordingly, the exceptions to the opinion and order of the learned hearing judge are dismissed, and the record is remanded to the register of wills.