Moore Estate.

Argued March 20, 1970; reargued May 27, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS and BARBIERI, JJ.

*Philip A. Brégy,* with him *Thomas F. Nelson, Roland Fleer, William J. Ramage* and *Kirkpatrick, Lockhart, Johnson & Hutchison,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, with him *Vincent X. Yakowicz, Francis J. Gafford, Edward T. Baker,* Deputy Attorney Generals, *Perry L. Reeher,* Counsel, and *J. Shane Creamer,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 12, 1971:

The Act of May 28, 1956, P. L. (1955) 1757, as amended, 72 P.S. §2301.1, provides that no inheritance tax shall be imposed upon charitable transfers. At issue in this appeal is the applicability of this statutory exemption to a charitable transfer pursuant to a general testamentary power of appointment created before but exercised after the effective date of the statute. We hold that this chronology qualifies the instant transfer for exemption. In so concluding, we reverse an orphans' court decree holding the transfer taxable.*

The facts have been stipulated and are as follows: Frank Moore died testate on February 6, 1954, a resident of Ellwood City, Lawrence County. By his will he left his residuary estate to Edith Moore, Thomas Johnson and the Lawrence Savings Company, as trustees, and directed them to divide the trust estate into two parts. In "Part I" of the trust the trustees were directed to pay the net income to decedent's wife, Edith Moore, for life and upon her death distribute the principal to such parties as she might appoint by her last will.

Edith Moore died testate on December 24, 1965. By her will she appointed the principal of Part I to the

---

* Following the original argument of this case, this decree was affirmed by an equally divided Court. Today's contrary decision follows reargument.

Lawrence Savings and Trust Company to be held in trust for the benefit of the First Presbyterian Church of Ellwood City, Pennsylvania (now Christ Church United Presbyterian) and the Ellwood City Hospital. Shortly thereafter the surviving trustees filed appropriate accounts with the Register of Wills listing the assets of Part I as of the date of Edith's death, together with a claim for charitable exemption from inheritance tax.

The Commonwealth denied the claim for tax exemption, and the trustees appealed to the Court of Common Pleas of Lawrence County, Orphans' Court Division. Their appeal was dismissed on July 11, 1969, and this appeal followed.

Section 1(d) of the Transfer Inheritance Tax Act of 1919, P. L. 521, as amended, 72 P.S. §2301(d) states in pertinent part: "A tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases: . . . (d) When any person or corporation comes into the possession or enjoyment by a transfer from a resident . . . of any property transferred pursuant to a power of appointment contained in any instrument taking effect after the passage of this act. . . . Provided, That property transferred pursuant to powers of appointment shall, in all cases where the power is hereafter exercised, be taxed as the estate of the donor, notwithstanding any blending of such property of the donee."

Section 45 of the same act defines "transfer" ". . . to include the passing of property, or any interest therein, in possession or enjoyment, present or future, by distribution, by statute, descent, devise, bequest, grant, deed, bargain, sale or gift."

The Transfer Inheritance Tax Act of 1919 is limited, however, by the Act of May 28, 1956, P. L. (1955) 1757,

as amended, 72 P.S. §2301.1, which provides: "No transfer inheritance tax shall be imposed upon the transfer of any property . . . to persons, corporations and organization where the transfer is by will . . . (a) To or for the use of any corporation, unincorporated association, or society, organized and operated, exclusively, for religious, charitable, scientific, literary or education purposes . . ."

The respective positions of the parties in this appeal may be briefly summarized: The Commonwealth concedes that the institutions appointed by the will of Edith Moore are statutorily exempt organizations but argues that the exemption is not available here because the power of appointment was created prior to June 1, 1957, the effective date of the exemption statute. Appellants agree, as indeed they must, that the act is prospective, that the donor of the power of appointment is regarded as the transferor for inheritance tax purposes, and that the time of the appointees' enjoyment is not controlling. They nevertheless contend that there was no "transfer . . . to" the church and hospital until Edith Moore's death in 1965.

In assessing these competing arguments, it is important to bear in mind that this appeal poses a single, albeit important issue of statutory construction, to wit: *when* did the "transfer . . . to" the appointees take place. In answering this question we must of course be guided by the text of the charitable exemption statute and by a consideration of the public policies which it seeks to foster.

As set out above, Section 1(d) of the Transfer Inheritance Tax Act of 1919 provides that property transferred pursuant to powers of appointment shall "be taxed as the estate of the donor", and Section 45 of the same act assigns a specific statutory definition to the term "transfer". The 1956 charitable exemption

statute, however, provides for the exemption of any "transfer . . . to" certain enumerated classes of organizations, and since a contrary legislative intent does not appear, this latter phrase must be construed in accordance with its common and ordinary sense. Statutory Construction Act, P. L. 1019, art. III, §33, 46 P.S. §533; *Treaster v. Union Township*, 430 Pa. 223, 242 A. 2d 252 (1968) ; *Harris-Walsh, Inc. v. Borough of Dickson City*, 420 Pa. 259, 216 A. 2d 329 (1966) ; *Commonwealth v. McHugh*, 406 Pa. 566, 178 A. 2d 556 (1962) ; *Pedrick v. Gordin*, 382 Pa. 26, 114 A. 2d 124 (1955) ; *Palmer v. O'Hara*, 359 Pa. 213, 58 A. 2d 574 (1948).

With this in mind, we find appellants' position persuasive. When the power of appointment was created in 1954, the eventual appointees had no interest whatsoever in the trust, either present or future, vested or contingent, cf. *Tracy Estate*, 403 Pa. 373, 170 A. 2d 93 (1961), and they did not obtain any legal or equitable interest in the trust until the power's exercise upon Edith Moore's death in 1965. To hold that there was a "transfer . . . to" the appointees prior to the passage and effective date of the charitable exemption statute would be to ascribe a highly artifical meaning to the statute in the absence of any apparent legislative intent that we do so. We therefore conclude to the contrary that there was no statutory "transfer . . . to" the appointees until the date of the exercise of the power.

This reading of the exemption statute comports with its obvious legislative purpose. As stated in *Baum Estate*, 418 Pa. 404, 211 A. 2d 521 (1965) : ". . . at this stage of society's dedication to human welfare, we need not pause to recall the Commonwealth's strong, consistent and very broad policy of assistance to charities and its long manifested encouragement to its citizens and businesses to make charitable contributions. It is

difficult to conceive of a Commonwealth public policy that is more fundamental or more meaningful than its frequently restated policy of encouragement to charities and charitable giving in the public interest." Id. at 407 n.2, 211 A. 2d at 522 n.2.

Were we to accept the Commonwealth's view in this appeal this fundamental public policy would be frustrated to a substantial degree. As of the date of the passage of the charitable exemption statute, Edith Moore, and presumably many others throughout the Commonwealth, possessed previously created but as yet unexercised general powers of appointment. The manifest purpose of the charitable exemption statute was to encourage those in a position to do so to direct their assets and those under their control toward charitable and benevolent ends. Under the Commonwealth's present theory there would have been no tax incentive for her and others in similar positions to appoint charitable institutions. We cannot conclude that the Legislature did not intend to tap this large reservoir of potential philanthropy.

The Commonwealth has made much reference in this appeal to a series of orphans' court decisions dealing with the effect of an increase in the applicable tax rate between the time of the donor's death and the time of the donee's exercise of the power. Representative of such cases is *Morris Estate*, 42 Pa. D. & C. 522 (Mont. Co. O.C. 1941), where the decedent-donor died in 1893 leaving to her granddaughter a life interest in a trust together with a general testamentary power to appoint the remainder. The granddaughter died in 1940 and by her will exercised the power in favor of the Smithsonian Institution of Washington, D.C. The orphans' court held that the property thus passing to the Smithsonian was taxable at the 5% rate in effect at the date of the power's creation in 1897 rather than

at the 10% rate in effect at the time of the power's exercise in 1940. See also *Fry Estate,* 41 Pa. D. & C. 2d 187, 192 (Phila. O.C. 1966); *Hess's Estate,* 11 Pa. D. & C. 311 (Phila. O.C. 1928); *Parke's Estate,* 13 Dist. Rep. 196 (Phila. O.C. 1904).

If the 1956 charitable exemption statute had never been enacted, the gifts in the instant case would have been unquestionably subject to a 15% inheritance transfer tax. It is accordingly contended that the exemption statute is materially similar to a general rate change statute by effectively reducing the tax rate on charitable transfers from 15% to 0%. To complete the argument, the Commonwealth relies upon the cited rate change cases and urges that the instant gifts should be taxed at the 15% rate prevailing at the power's creation rather than at the 0% "rate" in effect when the power was exercised.

Although the mathematical consequences of a rate change and the enactment of an exemption statute may be similar in a certain sense, this purported analogy is utterly devoid of substance. When the Legislature generally raises the rates of inheritance tax its purpose is to raise additional revenue in what it deems to be a fair and equitable manner. The purpose of an exemption statute is quite different. In passing the 1956 charitable exemption act, the Legislature intentionally relinquished potential revenue in order to encourage and stimulate the taxpaying public to make certain types of socially beneficial gifts. Because of these vastly dissimilar legislative goals, the cases dealing with the applicability of general tax rate changes to existing but unexercised powers of appointment are of no present relevance.

We are likewise unpersuaded by the Commonwealth's reliance upon the common law doctrine that the exercise of a power of appointment "relates back"

to the instrument creating the power and the person to whom the appointment is made takes his title as though the creation of the power and its exercise were effected by the same instrument. See, e.g., *Barton's Trust*, 348 Pa. 279, 35 A. 2d 266 (1944) ; *Huddy's Estate*, 236 Pa. 276, 84 Atl. 909 (1912) ; *Commonwealth v. William's Executors*, 13 Pa. 29 (1850). Whatever utility this historical fiction may have in other contexts, we shall not apply it here to reach a result opposite to that clearly suggested by both the text and underlying policy of the exemption statute.

The decree of the Court of Common Pleas of Lawrence County, Orphans' Court Division, is reversed. Appellee to bear costs.

Mr. Justice POMEROY took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE EAGEN :

I dissent.

This appeal was originally argued before six members of this Court on April 23, 1969. After careful consideration of the issues involved, the Court found itself equally divided and subsequently entered an order affirming the decree of the court below. The late Mr. Justice COHEN filed an opinion in support of the order of affirmance.[1] The appeal was later directed to be reargued and Mr. Justice ROBERTS has now filed an opinion reversing the decree of the court below.

Together with Mr. Justice O'BRIEN, I joined in Mr. Justice COHEN's opinion and nothing has happened since to persuade me to change my position. I take the privilege of now adopting Mr. Justice COHEN's opinion, which, in my view, is a correct disposition of the case.

---

[1] Mr. Justice ROBERTS filed a dissenting opinion in which Mr. Chief Justice BELL joined. Mr. Justice JONES noted a dissent.

"This case involves an appeal by the surviving trustees of a testamentary trust, appellants, from a supplemental Resident Inheritance Tax Appraisement made by the Commonwealth which denied the charitable exemption claimed by appellants. The proceedings were commenced in the Court of Common Pleas of Lawrence County, Orphans' Court Division, by the filing of a Petition of Appeal from Inheritance Tax Appraisement and Assessment on May 5, 1967. The parties filed a Stipulation of Facts, and on July 11, 1969, the court below dismissed the appeal.

"The facts are as follows: Frank E. Moore (Frank) died testate on February 6, 1954, a resident of Ellwood City, Lawrence County. By his will he left his residuary estate to Edith Moore, Thomas Johnson and Lawrence Savings and Trust Company, as trustees, and directed them to divide the trust estate into two parts, designated Part I—Trust for Edith Brown Moore, and Part 2—Frank E. Moore Trust Estate. The present appeal concerns only the trust of Part I where the trustees were directed to pay the net income to the decedent's wife, Edith Brown Moore (Edith) for her lifetime and on her death to distribute the principal to such parties, including her estate, as she might appoint by her last will.

"Edith died on December 24, 1965, and by her will exercised her power of appointment by appointing the principal to Lawrence Savings and Trust Company to be held in trust for the benefit of The First Presbyterian Church of Ellwood City, Pennsylvania (now Christ Church United Presbyterian) and the Ellwood City Hospital—the trust to be perpetual unless the principal is needed for a capital program.

"Appellants notified the Commonwealth of Edith's death and filed with the Register of Wills, as agent for the Commonwealth, schedules showing the assets held in

the Part 1 and Part 2 trusts on the date of Edith's death together with a claim for charitable exemption from inheritance tax on the entire Part 1 trust. The Commonwealth denied the claims for charitable exemption, and the inheritance tax was recomputed at 2% on the life estates and 15% on the remainder interests resulting in a total tax of $294,150.87.

"The sole issue in this case is whether property which passes to charity pursuant to the exercise of a general testamentary power of appointment which is created by the will of the donor is subject to inheritance tax in the estate of the donor under the tax statute in effect at the time of his death or whether such property is relieved from the tax by virtue of an amendment to the statute exempting transfers to charity from the tax where the exemption takes effect after the creation of the power by the donor but before the exercise of the power by the donee. The parties agree that the applicable tax statute is the Transfer Inheritance Act of 1919, P. L. 521, §1(d), as amended, 72 P.S. §2301 (d), which in relevant part states: 'A tax shall be, and is hereby imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations in the following cases: '(d) When any person or corporation comes into the possession or enjoyment by a transfer from a resident . . . of any property transferred pursuant to a power of appointment contained in any instrument taking effect after the passage of this act . . . . Provided, That property transferred pursuant to powers of appointment shall, in all cases where the power is hereafter exercised, be taxed as of the estate of the donor, notwithstanding any blending of such property of the donee.' Section 45, 72 P.S. §2461, stated: 'The word "transfer" as used in this act shall be taken to include the passing of property, or any

interest therein, in possession or enjoyment, present or future, by distribution, by statute, descent, devise bequest, grant deed, bargain, sale or gift.' Also relevant is the Act of May 28, 1956, P. L. (1955) 1757, §1, as amended 1957, July 11, P. L. 821, §1, 72 P.S. §2301.1, which states: 'No transfer inheritance tax shall be imposed upon the transfer of any property . . . to persons, corporations and organizations where the transfer is by will . . . (a) to or for the use of any corporation, unincorporated association, or society, organized and operated, exclusively, for religious, charitable, scientific, literary or educational purposes. . . .'

"Appellants concede that for inheritance tax purposes the donor of the power of appointment is regarded as the transferor, that the time of enjoyment is not controlling, and that the charitable exemption act is prospective and does not apply to transfers that were completed by vesting in the transferee prior to June 1, 1957. Tracy Estate, 403 Pa. 373, 170 A. 2d 93 (1961). Their argument is that this charitable gift did not vest until Edith's exercise of the power of appointment in her will (1965), that there was not a 'transfer to' (the statute's wording) the appointees until 1965 and that the time of the exercise of the power does not relate back to the date of Frank's death.

"Firmly embedded in Pennsylvania law is the concept of relation-back as it pertains to powers of appointment. Barton Trust, 348 Pa. 279, 35 A. 2d 266 (1944) ; Huddy's Estate, 236 Pa. 276, 84 Atl. 909 (1912) ; Commonwealth v. William's Executors, 13 Pa. 29 (1850). 'As variously expressed, the essence of the doctrine is that the exercise of a power of appointment relates back to the instrument creating the power, that the person to whom an appointment is made is "in by the donor" [the person creating the power] and takes his title from him as though the creation of the power

and the exercise of it were effected by the same instrument. Thus, where A devises property to B for life, remainder as B shall appoint, B's power is considered, in substance, as an authority to fill in a blank in A's will; and when B exercises the power in favor of C, C is considered as receiving the property by transfer from A, not from B.' 5 American Law of Property §23.3 at 465-6 (Callahan and Leach 1952).[2] Appellants concede the existence of this doctrine but say that it does not prevent them from gaining the charitable exemption because '[a]ll the relation-back doctrine requires is that the transfer of title be regarded as made by the donor of the power . . . . Where the question concerns *when* the transfer takes place, however, the actualities of the case are honored.' Here, the question when the transfer took place is all important for, as mentioned above, the charitable exemption statute operates prospectively only.

"This is the first opportunity we have had to face this particular question.[3] By its terms the statute imposes a tax on 'transfers to' persons, or corporations, but neither it nor the cases which have defined transfer, Tracy Estate, supra at 378, Mayer's Estate, 330 Pa. 39, 198 Atl. 439 (1938), are helpful in answering the question whether transfer is deemed to occur at the

---

[2] The editors express some criticism of the doctrine, but their comments are addressed to facts not present in this action, e.g., the relation of the doctrine to a general power presently exercisable and the situation where the doctrine enables a donee effectively to exercise a power although he lacks the capacity to make a conveyance.

[3] Two lower courts have faced the problem of a donor dying before June 1, 1957 and in his will creating a contingent remainder in favor of a charity which contingency is removed after June 1, 1957; and they have come to opposite conclusions. *Holsman Estate*, 19 Fid. Rep. 641 (O.C. Phila. 1969) and *Kerr Estate*, 26 Pa. D. & C. 2d 130 (O.C. York 1961).

moment of the exercise of the power of appointment or is related back and deemed to occur at the moment the donor died.

"The relation-back doctrine has been used, however, in the situation in which there has been an increase in the tax rates between the time of the donor's death and the donee's exercise of the power so as to make the donor's estate taxed at the rate applicable at the donor's death. In Morris' Estate, 42 Pa. D. & C. 522 (O.C. Montg. 1941) the decedent-donor who died in 1893 gave a life interest in a trust created by her will with a general testamentary power to appoint the remainder to a granddaughter who died in 1940 leaving a will by which she exercised the power in favor of the Smithsonian Institution of Washington, D.C. The court held that the appointed property was taxable in the estate of the donor at the rate of 5% applicable to collaterals under the Act of 1887, P. L. 79 (the rate in effect at the donor's death) and not at the 10% rate applicable to collaterals at the date of the donee's death. See, also, Fry Estate, 41 Pa. D. & C. 2d 187, 192 (O.C. Phila. 1966); Hess's Estate, 11 Pa. D. & C. 311 (O.C. Phila. 1928); Parke's Estate, 13 Pa. Dist. Rep. 196 (O.C. Phila. 1904); Grossman & Smith, Pennsylvania Inheritance and Estate Tax, §403-1 (1961); Restatement, Property §333, Illus. 1, Exam. 1 at 1876 (1940).

"Appellant seeks to distinguish these cases on the ground that 'although the transfer was not completed before the act was passed, it was certainly initiated before that time and, in any event, was a transfer by the donor of the power . . . .' If initiation is the key factor, however, certainly Frank did as much initiating as the donor in any of the above cases. Those cases stand not only for the proposition that the appointive property passes from the donor and is taxed in his estate but also for the proposition that the transfer is

deemed to have taken place at the time of the donor's death for if it were otherwise there would be no need to apply the rates applicable as of the date of the donor's death.

"There can be no question that if the legislature had never passed the charitable exemption act of 1956 the gift the church and the hospital are to receive as a result of the exercise of the power of appointment would be subject to transfer inheritance tax at the rate of 15%. Although that act is an exemption statute, it is similar to a change-of-rate statute for in effect it lowers the rate on gifts to charities from 15% to 0%. Therefore, we are here faced with a similar situation as in the cases cited above with the exception that in them the rates were raised instead of lowered in the interval between the donor's death and the donee's exercise of the power. Certainly it would not be reasonable to have the relation-back doctrine apply when the rate goes up and not have it apply when the rate goes down.

"Appellants argue that the case cited as the foundation of the relation-back principle, Marlborough v. Godolphin, 2 Ves. Sen. 61, 28 English Reprints 41 (1750), specifically refused to relate back the time of the exercise of the power to the date of the donor's death. That case, however, raised the issue whether a gift lapsed where the donee of the power designated an appointee who survived the donor but predeceased the donee, and 'If the appointee under a power to appoint by will dies before the donee of the power, the decisions are uniform to the effect that he cannot take under the power . . . . If courts followed consistently the doctrine that the exercise of the power is read back into the instrument creating the power, the result would be otherwise. But it seems reasonable to suppose that a donor who did not permit the donee to make an effective ap-

pointment until the donee's death intended the donee to make an appointment only to persons who survived him.' Simes & Smith, The Law of Future Interests §917 (2d ed. 1956). Therefore this lapse situation is a special one and distinguishable from the problem we now face.

"Consistency in the imposition of tax requires that the time of the transfer (i.e., the exercise of the power) be considered as the date of the donor's death. This has been done in the rate-change cases cited above, and we believe that this is essentially like a rate-change case. Therefore the charitable exemption statute is not applicable to property appointed after the effective date of the act under a power of appointment created prior to the effective date of the act.

"Our decision in this matter and the clarification of the law will undoubtedly obviate some appeals since the converse of this issue will occur in view of the fact that by the Act of December 29, 1967, P. L. 915, §1, 72 P.S. §2485-403, Class A rates have been increased from 2% to 6%. These appeals would be as to decedents dying between January 1, 1962 and December 28, 1967 who created powers of appointment which were exercised in favor of Class A transferrees on or after December 29, 1967.[4] Unless we are prepared to abandon our consistent approach, the tax on the donor's estate created would be at the rates in existence at the time of the creation of the power."

Mr. Justice O'BRIEN joins in this dissenting opinion.

---

[4] Section 103 of the Act of June 15, 1961, P. L. 373, 72 P.S. §2485-103, clearly states that the Inheritance Tax Act applies only to decedents dying on or after January 1, 1962, and that existing law (as to which the rate as to lineals remains at 2% applies to decedents dying before that date.